IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JENNY AYALA PEREZ, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-594-P |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Plaintiff Jenny Ayala Perez ("Perez") filed her action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Perez protectively filed her applications on April 29, 2019, alleging that her disability began on July 1, 2018. (Transcript ("Tr.") 16; *see* Tr. 372-86.) After her applications were denied initially and on reconsideration, Perez requested a hearing before an administrative law judge ("ALJ"). (Tr. 16; *see* Tr. 174-205.) The ALJ held hearings on May 28, 2020 and October 6, 2020 and issued a decision on November 25, 2020 denying Perez's applications for benefits. (Tr. 13–27, 54-149.) On February 22, 2021, the Appeals Council denied

Perez's request for review, leaving the ALJ's November 25, 2020 decision as the final decision of the Commissioner in Perez's case. (Tr. 1–6.) Perez subsequently filed her civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental

2

based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies his responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so

---

limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

3

long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). The Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In her brief, Perez presents the following issues:

1. Whether there is substantial evidence to support the ALJ's physical residual functional capacity ("RFC") determination because he failed to adequately assess the medical opinions of Dr. Jordan Sudberg ("Dr. Sudberg"), one of Perez's treating physicians; and

2. Whether the ALJ failed to properly include the claimant's mental functional limitations in the RFC assessment because of the ALJ's failure to reconcile the RFC with his own mental limitations findings.

(Plaintiff's Brief ("Pl.'s Br.") at 14–20.)

### IV. ALJ DECISION

In his November 25, 2020 decision, the ALJ found that Perez had not engaged in any substantial gainful since July 1, 2018, her alleged onset date of disability, and that she had met the insured status requirements of the SSA through June 30, 2022. (Tr. 18). In making her disability determination, the ALJ analyzed whether Perez was disabled in the following two distinct time periods: (1) from July 1, 2018 through October 20, 2019, the date Perez was involved in an automobile accident, and (2) from October 21, 2019 through the date of the decision. (Tr. 16-27.)

At Step Two, the ALJ found that, from July 1, 2018 through October 20, 2019, Perez suffered from the severe impairment of "headaches."[2] (Tr. 18.) At Step Three, from July 1, 2018

---

[2] The ALJ also found that from Perez's alleged onset date through the date of the decision, Perez's "medically determinable mental impairment of adjustment disorder has not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." (Tr. 19.) In making such a determination, the ALJ

4

to October 20, 2019, the ALJ found that Perez did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any section in the Listing. (Tr. 21.) As to Perez's RFC from July 1, 2018 to October 20, 2019, the ALJ stated, "After careful consideration of the entire record, the undersigned finds from her alleged onset date through October 20, 2019, the claimant had the residual functional capacity to perform work at any exertional level provided she not be exposed to greater than moderate noise."[3] (Tr. 24 (emphasis omitted).) Based upon this RFC assessment the ALJ concluded that, from July 1, 2018, to October 20, 2019, Perez was able to perform her past relevant work. (Tr. 24.)

In the second part of his analysis, the ALJ found at Step Two that from October 21, 2019 through the date of the decision, Perez suffered from the following "severe" impairments: "headaches, cervical disc herniation, and lumbar disc herniation with nerve root impingement." (Tr. 24.) At Step Three, the ALJ found that, from October 21, 2019 through the date of the decision, Perez did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any section in the Listing.[4]

As to Perez's RFC, the ALJ stated:

> After consideration of the entire record, the undersigned finds that beginning on October 21, 2019, the claimant has had the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.15687(a) and 416.967(a). She was able to tolerate noise at a moderate level – but no louder than that. She was able to sit up to 6 hours, stand and/or walk for up

---

considered the four broad areas of mental functioning known as the "paragraph B" criteria and found that Perez had no limitations in three of the four areas and a mild limitation in the area of adapting or managing oneself. (Tr. 19-20.)

[3] Later in his decision, the ALJ further stated, "In consideration of all of the above, the undersigned finds that for this period of [sic] the claimant's alleged onset date through October 20, 2019, the claimant had the residual functional capacity to perform work at any exertional level provided only that she be restricted to environments containing greater than moderate levels of noise." (Tr. 23.)

[4] The ALJ, in making her Step Three decision, stated that "[f]rom her alleged onset date through October 20, 2019, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (Tr. 24 (emphasis omitted).) The listed time period, however, appears to be a typographical error. In context, the appropriate period referenced is from October 21, 2019 through the date of decision.

5

to 3 hours daily – with no climbing of ladders, ropes and scaffolds, engage, and no more than occasional overhead reaching with the dominant right arm and, no more than occasional balancing, stooping, crouching and crawling.

(Tr. 25 (emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that Perez was capable of performing her past relevant work as an order clerk and as an administrative clerk. (Tr. 27). Consequently, the ALJ found that Perez was not disabled. (Tr. 27.)

## V.     DISCUSSION

### A.     Failure to Adequately Assess Dr. Sudberg's Opinions

As to her first issue, Perez argues that substantial evidence does not support the ALJ's physical RFC determination because the ALJ failed to evaluate Dr. Sudberg's medical opinion properly. (Pl's. Br. 14-18.) Specifically, Perez states:

> Here, the ALJ determined that as of October 21, 2019 the Plaintiff was capable of performing less than a full range of sedentary work but the ALJ's RFC was flawed because the ALJ failed to consider additional limitations which the treating physician opined.
>
> . . . .
>
> It is of note that the treating source issued three statements, one of which was a narrative letter simply stating that Plaintiff was unable to work due to pain, and two of which gave functional limitations. The first was not a medical opinion. The latter two were medical opinions.
>
> . . . .
>
> Thus, the ALJ was correct in stating that Dr. Sudberg's narrative letter of November 5, 2019 was neither persuasive nor helpful, because it was not a medical opinion. The ALJ erred, however, in failing to consider the Functional Capacity

6

Questionnaire[5] and the Medical Assessment[6] provided by Dr. Sudberg, because those documents were in fact medical opinions set forth under the regulations. To the extent the documents were consistent with each other, the ALJ might have been obliged to discuss only one of those opinions, but he had an obligation to articulate his consideration of at least one of the opinions pursuant to 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Dr. Sudberg's opinion is well-supported by the doctor's treatment notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions. . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consider, that on the date that Dr. Sudberg completed the Functional Capacity Assessment, April 10, 2020, he had treated Plaintiff consistently for 5 months. T. 1011-1053. He had ordered MRI imaging which had indicated disc herniations in the cervical and lumbar spine with nerve root involvement and with impingement of the L5 nerve root at the lumbar level. T. 996, 993. On the date that the form was completed Plaintiff presented to Dr. Sudberg with worsening pain in her lower back, requesting trigger point injections in the lumbar area. T 1046. Dr. Sudberg noted lower back pain radiating into the legs with spasms. T 1046. On examination Dr. Sudberg noted that lumbar trigger points were severely tender and that range of motion was restricted. T 1049. Straight leg raising, Yeoman's test and sacroiliac compression test were positive.

---

[5] In a "Physical Impairment Questionnaire" dated April 10, 2020, Dr. Sudberg opined, *inter alia*, that Perez could sit and stand/or walk from twenty to thirty minutes at a time and would be limited to sitting and standing or walking for zero to one hours in an eight-hour workday. (Tr. 1006; *see* Tr. 1006-07.) Dr. Sudberg also found that Perez would need a job that permitted shifting positions at will from sitting, standing, or walking and would need to take unscheduled breaks every twenty minutes that lasted twenty minutes before returning to work. (Tr. 1006.) Dr. Sudberg also opined that Perez could occasionally lift and carry less than ten pounds and never lift and carry ten pounds or more. (Tr. 1007.) In addition, Dr. Sudberg indicated that Perez would have limitations in doing repetitive reaching, handling, or fingering. (Tr. 1007.)

[6] In a "Physical Assessment" dated January 24, 2020, Dr. Sudberg opined, *inter alia*, that Perez would be limited to sitting and standing or walking for zero to one hours in an eight-hour workday. (Tr. 1002; *see* Tr. 1002-03.) Dr. Sudberg further found that Perez could occasionally lift and carry less than ten pounds and never lift and carry ten or more pounds and that Perez had limitations in doing repetitive reaching, handling, or fingering. (Tr. 1002.) In addition, Dr. Sudberg indicated that Perez would need to recline or lie down during an eight-hour workday in excess of the typical morning and afternoon break and lunchbreak. (Tr. 1002.)

> T 1049. Dr. Sudberg administered a trigger point injection in the lumbar region. T 1053.
>
> Further, Dr. Sudberg's opinion is consistent with other evidence in the record. . . . Specifically, it is consistent with the objective imaging studies which indicate that there is impingement of the L5 nerve root. T 993.

Pl.'s Br. at 15-17 (footnotes added).)

RFC is what an individual can still do despite her limitations.[7] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[8] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL

---

[7] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

[8] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

8

5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making her decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

As noted above, Perez argues that the ALJ erred in failing to properly assess two medical opinions from Dr. Sudberg, the Physical Impairment Questionnaire and the Physical Assessment. (Tr. 16.) The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a

medical source provides one or more medical opinions[9] or prior administrative medical findings,[10] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate. 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7. "Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings

---

[9] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[10] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

about the same issue that are both well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination." *Id.*

In this case, the ALJ, as stated above, found that, from October 21, 2019 through the date of the decision, Perez had the physical RFC to perform less than a full range of sedentary work with certain limitations: (1) "tolerat[ion] of noise at a moderate level – but no louder than that;" (2) sit up to six hours and stand and/or walk for up to three hours daily, (3) no climbing of ladders, ropes and scaffolds; (4) "engage, and no more than occasional overhead reaching, with the dominant right arm;" and (5) no more than occasional balancing, stooping, crouching, and crawling. (Tr. 25.) In making the physical RFC determination, the ALJ considered, *inter alia*, the opinions of James W. Washburn, M.D. ("Dr. Washburn"), the medical expert that testified at the October 6, 2020 hearing before the ALJ, and the State agency medical consultant, Dr. Andrea Pollack, D.O. ("Dr. Pollack") regarding Perez's physical limitations, as well as other medical evidence in the record. Specifically, the ALJ stated, *inter alia*:

> After reviewing all of the evidence of record, Medical Expert Dr. Washburn testified that beginning on October 21, 2019, the claimant's physical work-related restrictions would consist of lifting and/or carrying less than ten pounds frequently – or less than 15 pounds occasionally, sitting for six hours, standing and/or walking for three hours. Furthermore, according to Dr. Washburn, the claimant would be able, on an occasional basis be able to reach overhead with her right arm, and climb stairs or ramps. She would need to avoid ladders and overhead reaching. (Medical Expert Testimony).
>
> The undersigned finds that, for this period, Dr. Washburn's testimony is persuasive. The findings cited and discussed by Dr. Washburn lead logically to the conclusion he expressed for this period – that the claimant was limited to essentially sedentary work. (*See* Medical Expert Testimony). Dr. Washburn's testimony is consistent with the evidence of record, because the medical evidence of record for this period also indicates a sedentary capacity. (*See e.g.* Ex.'s 16F, 17F, 20F[.])

>       For this period beginning on October 21, 2019, the undersigned finds persuasive the report of State agency consultative examiner Dr. Pollack. Dr. Pollack's assessment for what essentially is sedentary work, during this time interval, is supportable because it follows logically from the findings upon which it relies (*See e.g.* Ex. 9 at 3-4). Dr. Pollack's assessment is consistent with the medical evidence of record because the medical evidence of record for said period indicates a sedentary capacity (*See e.g.* Ex.'s 16F, 17F, 20F).
>
>       . . . .
>
>       The undersigned notes that Dr. Sudberg submitted a report with the conclusory opinion that the claimant is "unable to work" (Ex. 14F). As such, Dr. Sudberg's report pertains to an issue reserved to the Commissioner and is therefore neither valuable nor persuasive (20 CFR 404.1520b(c)(3) and 416.920b(c)(3)).

(Tr. 25–26.)

At issue here is the ALJ's failure to specifically consider two of the documents submitted by Dr. Sudberg: (1) the January 24, 2020 Physical Assessment and (2) the April 10, 2020 Physical Impairment Questionnaire. (Tr. 16.) After reviewing the ALJ's decision, it appears, as Perez asserts, that the ALJ erred in failing to consider both of these documents in his decision as the only mention of Dr. Sudberg by name in such decision is in reference to the letter sent by Dr. Sudberg stating Perez was unable to work. (Tr. 26). The Physical Assessment and Physical Impairment Questionnaire, however, contained Dr. Sudberg's opinions regarding how Perez's impairments limited her ability to work. Thus, such opinions should have been considered by the ALJ.

However, while the ALJ failed to properly assess Dr. Sudberg's opinions, that failure does not necessarily merit remand. Procedural perfection in administrative hearings is not required, and a court will not vacate judgment unless substantial rights of a party have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). A court will vacate the ALJ's decision only if the plaintiff's rights are substantially affected because the harmless error doctrine applies to social security cases. *Jones v. Saul*, 834 F. App'x 839, 840 (5th Cir. 2020) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009)).

In this case, the Court finds that "even if the ALJ made an error, the error would be harmless" because additional substantial evidence to support the ALJ's decision exists in the record—specifically the opinions of Dr. Washburn, the medical expert, who assessed Dr. Sudberg's opinions in his own testimony during the October 6, 2020 hearing before the ALJ. (Tr. 103-26.) *Brooks v. Astrue*, No. 5:08-CV-081-C, 2009 WL 667197, at *3 (N.D. Tex. 2009) The ALJ is entitled to rely upon the analysis of an independent medical examiner in formulating the RFC determination. *See, e.g., Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011). In this case, the ALJ specifically asked Dr. Washburn about Dr. Sudberg's opinions during the October 6, 2020 hearing before the ALJ and Dr. Washburn set forth in detail why he disagreed with Dr. Sudberg's opinions. (Tr. 102-13). The ALJ, in his decision, found the opinions of Dr. Washburn persuasive and used those findings, as wells as the opinions of Dr. Pollock, to formulate Perez's RFC determination. (Tr. 25-26). Because there was substantial evidence to support the ALJ's decision, remand is not required.

### B. Failure to Include Paragraph B Findings into the RFC Determination

In her brief, Perez also argues that the ALJ erred in failing to include in the RFC determination the ALJ's finding in the Paragraph B analysis that Perez had a mild limitation in adapting or managing herself. (Pl's Br. At 18). Specifically, Perez states:

> The failure to include [the finding that Perez had mild limitations in her ability to adapt or manage herself] into the RFC is error. The RFC must reflect the most someone can do despite their mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Absent the mental limitations found by the ALJ, the RFC is not an accurate portrayal of Plaintiff's actual ability "to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.
>
> The ALJ's finding of a non-severe mental impairment does not cure the error of failing to incorporate the limitations resulting from that impairment into the RFC. . . . Here, even a mild limitation in Plaintiff's ability to manage herself, as found by the ALJ could have impacted her capacity to adapt to changes in the

> work setting and make plans independently of others. Despite this, the RFC contains no restrictions or accommodations for any limitation in concentration, persistence, or pace. T 20, 25.

(Pl.'s Br. at 18-19.) Perez further argues that the ALJ did not inquire about the effects of Perez's mental limitations on her ability to work in the hypothetical question posed to the vocational expert ("VE"), which rendered the hypothetical question incomplete. (Pl.'s Br. at 19.)

The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b) (1), 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[11] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[12]  20 C.F.R. §§

---

[11] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

[12] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

In this case, as stated above, the ALJ found that, Perez suffered from, *inter alia*, the severe impairment of headaches from July 1, 2018 through the date of the ALJ's decision. (Tr. 18). In addition, the ALJ, in conducting the special technique and evaluating the paragraph B criteria, determined, *inter alia*, that Perez had a mild limitation the functional area of adapting or managing oneself.[13] (Tr. 20–21.) In making this determination, the ALJ stated:

> Although his November 8, 2019 report showed slight difficulties in the execution of mathematical tasks, State agency consultative examiner [Paul Spencer Herman, Ph.D. ("Dr. Herman"),] found the claimant to have no mental work-related limitations, nothing that she had not undergone any psychiatric treatment since

---

[13] The ability to adapt or manage oneself is defined as follows:

This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4.

>2016 and, in fact, she had been working in 2017. (*See generally* Ex. 13F). Consistent with Dr. Herman's findings, the medical evidence of record showed that the claimant has not been on psychiatric medication, and that she had not sought or received any mental health treatment prior to April 2020, and that the treatment the claimant had received from her therapist Mr. Jordan beginning in 2020, exclusively of a psychotherapeutic nature, also indicated no significant work-related limitations (*See generally* Ex.'s 21F-22F, 25F).
>
>Standing in contrast here is the report of Mr. Jordan. The findings Mr. Jordan provided in his report do not lead logically to his conclusion that the claimant is moderately limited regarding requesting assistance and maintaining socially appropriate behavior, and, either markedly or extremely limited regarding all other areas of work-related mental functioning (See Ex. 21F at 4). Mr. Jordan's conclusion is not consistent with the medical evidence of record because the medical record of evidence shows that at all times relevant to this decision, the claimant's mental impairment of adjustment disorder imposed no significant mental work-related limitations more than, at most, minimal limitations upon her ability to work. (*See generally* Ex.'s 13F, 21F-22F, 25F).
>
>Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)). The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of the mental impairments at steps 2 and 3 of the sequential evaluation process. . . . Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 20-21.)

While Perez claims that the ALJ's RFC determination is incomplete and the hypothetical question posed to the VE does not fully encompass Perez's mental limitations because there were no limitations included regarding her mild limitation in adapting and managing herself, the Court notes, that the paragraph B criteria limitation of having mild limitations in a functional area that the ALJ found following the "special technique" is not an RFC assessment. SSR 96–8p, 1996 WL 374184, at *4. Instead, it is used to rate the severity of Perez's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various

functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments . . . ." *Id.* Moreover, "[w]hile the regulations require the ALJ to evaluate[ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue,* No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.29, 2009).

In this case the ALJ, based on substantial evidence in the record, analyzed Perez's mental impairments under the special technique and ultimately found that Perez had no severe mental impairments and included no mental limitations in his RFC determinations. *See, e.g., Mattie D.C. v. Berryhill,* No. 3:18-cv-281-D-BT, 2019 WL 1084185, at *4 (N.D. Tex. Feb. 13, 2019). In making such a determination, the ALJ clearly considered and analyzed Dr. Herman's report as well as the competing report by James R. Jordan, Perez's therapist. (Tr. 20; Tr. 950-54; Tr. 1060-63). Moreover, the ALJ exercised his responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the RFC and the hypothetical question to the VE that were most supported by the record. *Jacobs v. Berryhill,* No. 5-17-CV-429, 2018 WL 3323764, at *5 (W.D. Tex. July 6, 2018), *report and recommendation adopted,* No. 5-17-CV-429, 2018 WL 4688775 (W.D. Tex. July 24, 2018). Accordingly, the Court finds substantial evidence supports the ALJ's RFC determination and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections by 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 16, 2022**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED May 2, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE